# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **W.C. and P.C.**

**No. 19-0603** (Ohio County 18-CJA-51 and 18-CJA-52)

**FILED**

**April 6, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.P., by counsel Richard W. Hollandsworth, appeals the Circuit Court of Ohio County's May 30, 2019, order terminating her parental rights to W.C. and P.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Anne Marie Morelli, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in finding that she had not substantially corrected the conditions of abuse and neglect, terminating her parental rights without imposing a less-restrictive disposition, and failing to rule on the terms of petitioner's improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed an abuse and neglect petition against petitioner alleging that her house was filthy, the children had lice, there was domestic violence in the home, and petitioner had untreated mental health and substance abuse issues. Specifically, the DHHR alleged that petitioner left her daughter in the care of strangers while she overdosed on drugs in a car in a parking lot, and, as a result, was charged with various crimes.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]For brevity and clarification, the Court has combined and condensed several of petitioner's assignments of error.

The circuit court held an adjudicatory hearing in July of 2018, and petitioner stipulated to abusing non-prescribed Xanax and Suboxone. She also stipulated to leaving her daughter in the care of strangers while she used drugs. Notably, petitioner stipulated that her substance abuse was ongoing and she was willing to "do whatever the [multidisciplinary team] ("MDT") reasonably requires to obtain an agreed-to improvement period." Petitioner stated she was "presently seeking a long term treatment program." The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Thereafter, petitioner attended a MDT meeting in which she disclosed her extensive history of mental health and drug abuse issues. The MDT reviewed petitioner's drug screens from the past two months, which were positive for buprenorphine, marijuana, alcohol, and methamphetamine. Petitioner then filed a motion for a post-adjudicatory improvement period. In August of 2018, petitioner was admitted into a substance abuse stabilization unit for eleven days and was released after receiving a Vivitrol shot to curb her addiction.

In September of 2018, the circuit court held a status hearing wherein the parties explained that they could not agree on the terms of petitioner's requested improvement period. The DHHR and the guardian argued that petitioner needed to complete inpatient rehabilitation due to her extensive history of substance abuse and mental health issues and noted that she had not yet attended her scheduled psychological examination. Petitioner requested that she be allowed to complete short-term substance abuse treatment or outpatient services. As there was no agreement, the circuit court stated that it would set the matter for disposition and not award petitioner an improvement period. After a short recess in which petitioner discussed the matter with counsel, petitioner accepted the term of completing an inpatient treatment program as a condition of her improvement period, and the circuit court granted her a post-adjudicatory improvement period.

Petitioner submitted to a psychological evaluation in October of 2018. The evaluation was completed on November 2, 2018, the results of which showed that petitioner was diagnosed with Polysubstance Use Disorder and Unspecified Personality Disorder with impulsive and dependent personality traits. The psychologist opined that petitioner could attempt an intensive outpatient program if she did not relapse, but believed inpatient treatment may be necessary. The evaluation recommended, among other things, that petitioner "demonstrate six months clean time to ensure her commitment to sobriety." In November of 2018, petitioner entered into an intensive outpatient program but was discharged for noncompliance on December 5, 2018. Thereafter, petitioner was referred to a twenty-eight day inpatient treatment program, but she failed to enroll.

In January of 2019, the circuit court held a status hearing in which it addressed petitioner's failure to complete an inpatient program and her recent relapse in recovery. Petitioner argued that because the psychologist recommended that she could attend intensive outpatient rehabilitation, she was "confused" about which treatment she should attend. Nonetheless, petitioner stated that she understood that completing inpatient treatment was a condition of her improvement period and that she would report to an appropriate facility the same day. However, petitioner failed to report to the inpatient treatment program, and the guardian filed a motion to terminate her improvement period. The motion noted that the inpatient treatment program would no longer accept petitioner's applications because she had failed three times to report for treatment. In March of 2019, the circuit court held a hearing on the guardian's motion. Petitioner announced that she did not contest the

termination of her improvement period and filed a written waiver with the circuit court. The circuit court then terminated petitioner's improvement period.

The circuit court held the final dispositional hearing in May of 2019. The DHHR presented evidence that petitioner was removed from an intensive outpatient program for noncompliance and referred to an inpatient treatment program. However, petitioner failed to enroll in the inpatient program, despite the program workers' efforts to secure a bed on three separate occasions. The DHHR also presented evidence that petitioner declined a program that provided sober living housing that allowed children to stay, which would have helped to reunify her with the children. The DHHR further presented evidence that petitioner had been noncompliant with services since January of 2019, when she tested positive for alcohol and started missing drug screens. Due to her noncompliance, petitioner's supervised visitations were suspended. The DHHR worker then testified that the MDT's recommendation at its first meeting was for petitioner to attend a long-term inpatient rehabilitation program due to her lengthy history of drug abuse and untreated mental health issues. She further testified that petitioner's failed attempt to complete an intensive outpatient program supported the MDT's recommendation for inpatient treatment. Lastly, she testified that the DHHR recommended the termination of petitioner's parental rights, as she failed to regain her supervised visitations with the children despite not seeing them for many months.

Petitioner testified that she had been sober for more than 280 days, that her positive drug screen was not a relapse, and that she stopped submitting to drug screens after the DHHR services provider informed her that services had been terminated. She further testified that attending inpatient rehabilitation would have been detrimental to her recovery because she would have lost her employment. Finally, petitioner requested that the circuit court terminate only her custodial rights, arguing that she could improve herself on her own terms. Based upon the evidence, the circuit court found that petitioner had over a year to address her substance abuse and mental health issues, but failed to do so. The circuit court concluded that petitioner had not submitted to drug screens in two months; had not seen her children since the suspension of her supervised visitations in January of 2019; and had not completed any meaningful addiction treatment. The circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the children to terminate petitioner's parental rights. Accordingly, the circuit court terminated petitioner's parental rights by its May 30, 2019, order. It is from this dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left

---

[3]The fathers of W.C. and P.C. were nonabusing parents below, and the children will remain in their respective father's custodies.

with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises four assignments of error related to the termination of her parental rights and one assignment related to the circuit court's findings regarding the terms of her improvement period.[4] We first address the termination of petitioner's parental rights. Petitioner argues that the circuit court erred in finding that she had not corrected the conditions of abuse and neglect when she was "sober" throughout the proceedings and when her substance abuse was the only condition of abuse and neglect that needed to be corrected. Petitioner also asserts that the circuit court erred in terminating her parental rights without imposing a less-restrictive disposition. Moreover, petitioner argues that the circuit court failed to analyze the best interests of the children in making its final ruling. We disagree and find that petitioner is entitled to no relief.

Contrary to petitioner's position that she was sober and her substance abuse was the only condition of abuse and neglect that needed to be corrected, the record shows that petitioner also

---

[4]Petitioner argues at length about the qualifications of presiding circuit court judges in child abuse and neglect proceedings, but fails to cite any authority demonstrating how this argument is relevant to the issue of the termination of her parental rights. Petitioner's failure to provide any support for her argument is in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, as follows:

> The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Because petitioner's brief with regard to this assignment of error is inadequate and fails to comply with Rule 10(c)(7), we decline to address her argument on appeal.

4

admitted to untreated mental health issues. At adjudication, petitioner stipulated that her substance abuse was an ongoing problem, that she was seeking long-term drug treatment, and that she had long-term mental health problems. However, petitioner recanted and unilaterally refused to attend inpatient treatment to address her substance abuse and mental health issues. Also, despite petitioner's contention that she was "sober" throughout the proceedings, the record indicates that she tested positive for buprenorphine, marijuana, alcohol, and methamphetamine around June and July of 2018. She also tested positive for alcohol and missed several drug screens in January of 2019, and failed to drug screen from February 19, 2019, until the dispositional hearing in May of 2019. Because petitioner did not submit to drug screening for nearly four months prior to the final dispositional hearing, the record is devoid of any proof of petitioner's alleged sobriety. Clearly, petitioner failed to correct the conditions of abuse and neglect.

West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. Further, pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child[ren]."

As shown above, the record supports the finding that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect in the near future because she failed to follow through with her case plan by meaningfully addressing her serious substance abuse and mental health issues. Most importantly, petitioner agreed to the term of inpatient treatment, and the circuit court awarded her a post-adjudicatory improvement period based upon that agreement. Although petitioner claims she was punished for not "blindly" agreeing to inpatient treatment, the other MDT members reasonably made their recommendation of inpatient treatment based upon petitioner's positive drug screens for various substances and her admission to an extensive history of substance abuse and mental health problems. While petitioner claimed she should have been permitted to complete outpatient treatment, she was removed from the intensive outpatient program for noncompliance and referred to an inpatient rehabilitation program in December of 2018, which she did not attend. As petitioner accepted the reasonable term of inpatient treatment as a condition of her improvement period, but failed to complete said term, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future.

While petitioner claims that the circuit court failed to assess the best interests of the children, the circuit court clearly made the required findings in its May 30, 2019, order. The circuit court found that it was in the best interests of the children to remain in the custody of their respective fathers. It further found that termination of petitioner's parental rights was in the children's best interest as they needed permanency. Indeed, the record supports such a finding because petitioner elected to stop drug screening and never regained supervised visitation with the children despite not seeing them for nearly five months. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently

5

and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). The circuit court further found that there were safety concerns with the children given petitioner's "untreated issues" and that seeing petitioner again would be "detrimental to their emotional well-being." As such, the record supports the finding that termination of petitioner's parental rights was necessary for the children's welfare.

To the extent petitioner claims that she should have been granted a less-restrictive disposition because the children were not seriously threatened, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future, a less-restrictive alternative disposition was not warranted.

Lastly, petitioner argues that the circuit court erred in failing to make a ruling regarding whether she should be required to attend inpatient treatment as a term of her improvement period. However, petitioner misrepresents the record. In September of 2018, the parties advised the circuit court that they were unable to reach an agreement regarding the issue of inpatient treatment. As a result, the circuit court stated that it would set the matter for disposition. After speaking with counsel, petitioner agreed to attend inpatient treatment and was granted a post-adjudicatory improvement period based upon that agreement. As such, petitioner's argument that the circuit court erred in failing to rule on this term is disingenuous as it is clear petitioner agreed to it as a condition of her post-adjudicatory improvement period. Therefore, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 30, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison